UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| KHANH NIELSON, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>THE SPORTS AUTHORITY, and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No: C 11-4724 SBA<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL**<br><br>Dkt. 24 |

The parties are presently before the Court on Plaintiff's Motion for Order: (1) Granting Preliminary Approval of Class Action Settlement; (2) Granting Conditional Certification of the Settlement Class; (3) Appointing Class Counsel; (4) Appointing Class Representative; (5) Appointing Claims Administrator; and (6) Approving First Amended Complaint, Class Notice, Claim Form, Request For Exclusion Form and Timeline for Administration ("Motion for Preliminary Approval"). Dkt. 24. Having read and considered the papers filed in connection with the motion, and finding good cause therefrom, the Court DENIES Plaintiff's motion. The Court, in its discretion, finds this matter suitable for resolution without oral argument. See Fed. R. Civ. P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

**I.   BACKGROUND**

On August 22, 2011, Plaintiff Khanh Nielson ("Plaintiff") filed the instant wage and hour class action against The Sports Authority ("Defendant") in San Francisco County Superior Court. Dkt. 1. The Complaint alleges causes of action for: (1) failure to provide meal and rest periods; (2) failure to pay wages (straight time, overtime, premium pay, and minimum wage); (3) failure to provide accurate itemized or properly formatted wage

statements; (4) failure to pay wages upon termination or timely upon/after termination; (5) unfair business practices in violation of Cal. Business and Professions Code section 17200, et seq; and (6) violation of the California Private Attorney General Act, Cal. Labor Code section 2699 et seq. The Complaint also seeks waiting time penalties under Labor Code section 203, pre-judgment interest, and attorneys' fees and costs. Plaintiff purports to represent a class described as: "All persons who are and/or were employed as non-exempt employees by The Sports Authority, Inc. in one of more of its California retail stores between August 22, 2007 and the present." Compl. ¶ 20. The Complaint, however, does not specify what job position Plaintiff held, what her job duties were, or whether she is a current or former employee. Id. ¶¶ 1, 4.

Defendant removed the action to this Court on September 22, 2011, on the basis of diversity jurisdiction, 28 U.S.C. § 1332(a), and the Class Action Fairness Act, id. § 1332(d)(2). Dkt. 1. Following removal, Plaintiff served written discovery on Defendants, but the parties subsequently agreed to stay discovery pending meditation. Salassi Decl. ¶ 5, Dkt. 25. Instead, Plaintiff obtained data voluntarily produced by Defendant concerning the number of class members, hours worked, the number of shifts, pay rates and the average amount of hours worked per class member. Id. ¶ 15. On July 31, 2012, the parties participated in a mediation session with attorney Mark Rudy, and reached a settlement in principle. Id. ¶¶ 6, 8. On August 31, 2012, the parties executed a written settlement agreement. Id. ¶ 9.

Under the settlement, Defendant has agreed to pay a Gross Settlement Amount of $2,500,000. Salassi Decl. Ex. A ¶ 22, Dkt. 25-1. The Net Settlement Amount available to pay claims by class members consists of the Gross Settlement Amount *less* attorneys' fees (based on 25% of the Gross Settlement Amount), litigation costs, an enhancement award of $2,500 to the Plaintiff and settlement administration expenses. Id. ¶¶ 52, 53, 56. The settlement provides for a reversion to Defendant of any unclaimed amounts from the Net Settlement Amount. Id. ¶ 57. Within five days of preliminary approval of the settlement, Defendant will provide the settlement administrator a database containing the contact

information for the settlement class in order to facilitate notice to the class. Id. ¶ 62. Plaintiff proposes allowing class members thirty days to submit their claim form or opt out. Id. ¶ 65.

Plaintiff has now filed a Motion for Preliminary Approval in which she seeks preliminary approval of the settlement, conditional certification of the settlement class, the appointment of class counsel, the appointment of Plaintiff Khanh Nielson as class representative and authorization for Plaintiff's counsel to solicit bids from prospective claims administrators. Although Defendant has not filed any response to the motion, the Court, based on its independent review of the matter, finds that Plaintiff has failed to satisfy her burden of demonstrating that conditional certification of the settlement class under Federal Rule of Civil Procedure 23(a) and (b)(3) or preliminary approval of the settlement is appropriate. For that reason, the instant motion will be denied.

## II. DISCUSSION

The Ninth Circuit has declared that a strong judicial policy favors settlement of class actions. Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992). Nevertheless, where, as here, "parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both [1] the propriety of the certification and [2] the fairness of the settlement." Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003).

### A. CLASS CERTIFICATION

The district court has discretion to certify a class action under Rule 23. Meyer v. Portfolio Recovery Assocs., LLC, 696 F.3d 943, 947 (9th Cir. 2012). To obtain class certification, the plaintiff must satisfy the four prerequisites identified in Rule 23(a) *as well as* one of the three subdivisions of Rule 23(b). Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 614 (1997). "The four requirements of Rule 23(a) are commonly referred to as 'numerosity,' 'commonality,' 'typicality,' and 'adequacy of representation' (or just 'adequacy'), respectively." United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO v. ConocoPhillips Co., 593 F.3d 802, 806

(9th Cir. 2010). Certification under Rule 23(b)(3) is appropriate where common questions of law or fact predominate and class resolution is superior to other available methods. Fed. R. Civ. P. 23(b)(3). The party seeking class certification bears the burden of affirmatively demonstrating that the class meets the requirements of Rule 23. Wal-Mart Stores, Inc. v. Dukes, — U.S. —, 131 S.Ct. 2541, 2551 (2011).

In general, "[b]efore certifying a class, the trial court must conduct a 'rigorous analysis" to determine whether the party seeking certification has met the prerequisites of Rule 23." Mazza v. Am. Honda Motor Co., Inc., 666 F.3d 581, 588 (9th Cir. 2012) (citation and quotations omitted). When evaluating class certification in the context of a proposed settlement, courts "must pay 'undiluted, even heightened, attention' to class certification requirements" because, unlike in a fully litigated class action suit, the court will not have future opportunities "to adjust the class, informed by the proceedings as they unfold." Amchem Prods., 521 U.S. at 620; accord Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998).

### 1. Rule 23(a)

#### *a) Numerosity*

The numerosity requirement mandates that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ.P. 23(a)(1). In addition, the class should be "ascertainable," Mazur v. eBay Inc., 257 F.R.D. 563, 567 (N.D. Cal. 2009), meaning that the class definition must be "definite enough so that it is administratively feasible for the court to ascertain whether an individual is a member," O'Connor v. Boeing N. Am., Inc., 184 F.R.D. 311, 319 (C.D. Cal. 1998). Here, Defendant's records establish that there are 9,518 class members who were classified as non-exempt employees during the class period. See Solassi Decl. ¶ 11. This is facially sufficient to satisfy Rule 23's numerosity and ascertainability requirements. See Hanlon, 150 F.3d at 1019 ("The prerequisite of numerosity is discharged if 'the class is so large that joinder of all members is impracticable.'") (quoting in part Rule 23(a)(1)).

### b) *Commonality*

"Commonality focuses on the relationship of common facts and legal issues among class members." Id. at 1021. This requirement is met through the existence of a "common contention" that is of "such a nature that it is capable of classwide resolution[.]" Dukes, 131 S.Ct. at 2551. "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of commons answers." Id.

Plaintiff attempts to satisfy the commonality requirement by listing various legal issues—namely, the California statutes allegedly violated by Defendants—which she contends are common to the class. See Mot. at 9. However, Plaintiff makes no effort to identify her job position or duties relative to the class. The only common thread between them is that both were classified as non-exempt and worked at one or more of Defendant's retail outlets in California. Since it is highly unlikely that all positions and job duties at Defendant's retail stores are identical, the Court is not persuaded that there are no dissimilarities in the proposed class that could "impede the generation of common answers apt to drive the resolution of the litigation." Dukes, 131 S.Ct. at 2551; e.g. Kelley v. SBC, Inc., No. C 97-2729 CW, 1998 WL 1794379, at *15 (N.D. Cal. 1998) (finding that commonality only existed as to class members who shared the job positions actually held by the plaintiff). Thus, Plaintiff has failed to establish commonality under Rule 23(a).

### c) *Typicality*

The next requirement of Rule 23(a) is typicality, which focuses on the relationship of facts and issues between the class and its representative. "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." Hanlon, 150 F.3d at 1020. "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been

1    injured by the same course of conduct." Hanon v. Dataproducts Corp., 976 F.2d 497, 508
2    (9th Cir. 1992) (citation and internal quotation marks omitted).
3           Plaintiff contends that "[t]ypicality is met here as the claims of the Settlement Class
4    are based on the same legal and factual claims as that of the Plaintiff." Mot. at 10. Though
5    Plaintiff fails to elaborate further on this conclusory assertion, the Court presumes that
6    Plaintiff is alleging that she and the class suffered the same injury; that is, Defendant's
7    misclassification of employees and concomitant failure to pay overtime and provide meal
8    and rest periods in violation of California law. Courts have found Plaintiff's theory of
9    typicality acceptable—*but only as to the positions that the plaintiff actually held*. See
10   Campbell v. PriceWaterhouseCoopers, LLP, 253 F.R.D. 586, 603 (E.D. Cal. 2008); accord
11   Kelley, 1998 WL 1794379, at *15. In this case, Plaintiff fails to specify what position or
12   positions she held while employed by Defendant. Given the absence of this information,
13   the Court finds that Plaintiff has failed to establish that her claims are typical of those of the
14   class.

### d)     *Adequacy of Representation*

16          Members of a class may sue as representatives on behalf of the class only if they will
17   fairly and adequately protect the interests of the class as a whole. Fed. R. Civ. P. 23.
18   "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and
19   their counsel have any conflicts of interest with other class members, and (2) will the
20   named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"
21   Hanlon, 150 F.3d at 1020. While there is nothing to indicate that Plaintiff or her counsel
22   has any conflicts of interest with putative class members or that their interest in the case is
23   insufficient to ensure vigorous representation, no specific information is provided about
24   Plaintiff beyond her being a non-exempt employee who worked at one or more of
25   Defendant's retail stores. In the absence of such information, the Court cannot conclude, at
26   this juncture, that Plaintiff is an adequate class representative.

### 2. Rule 23(b)(3)

Finally, Plaintiff has not sufficiently demonstrated that it would be appropriate to certify the settlement class under Rule 23(b)(3). This provision requires the Court to find that: (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). These provisions are referred to as the "predominance" and "superiority" requirements. See Hanlon, 150 F.3d at 1022-23.

Plaintiff contends that the requirements of Rule 23(b)(3) are satisfied, ostensibly because Plaintiff and class members seek the same relief as a result of the same policy of misclassifying non-exempt employees. See Mot. at 11-12. But to secure certification under Rule 23(b)(3), Plaintiff must offer more than vague references to "company-wide common policies and procedures." See Mot. at 11. "Whether such a policy is in place or not, courts must still ask where the individual employees actually spent their time." In re Wells Fargo Home Mortg. Overtime Pay Litig., 571 F.3d 953, 959 (9th Cir. 2009). Since Plaintiff's motion provides no such elucidation, the Court finds that Plaintiff has failed to satisfy the predominance and superiority requirements of Rule 23(b)(3).

In sum, the Court concludes that Plaintiff has failed to demonstrate that class certification under Rule 23(a) and (b)(3) is warranted in this action.

### B. FAIRNESS OF THE SETTLEMENT

Rule 23 requires judicial review of any settlement of the "claims, issues, or defenses of a certified class." Fed. R. Civ. P. 23(e). The decision of whether to approve a proposed class action settlement entails a two-step process. See Manual for Complex Litig. § 21.632 (4th ed. 2004). The Court first conducts a preliminary fairness evaluation. Id. If the Court preliminarily approves the settlement, notice to the class is then disseminated and a "fairness" or final approval hearing is scheduled. Id. The second step of the process culminates in a fairness hearing at which the proponent of the settlement must demonstrate that the settlement is "fair, reasonable, and adequate." Id.; Fed. R. Civ. P. 23(e)(2). "The

purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." In re Syncor ERISA Litig., 516 F.3d 1095, 1100 (9th Cir. 2008) (citation omitted).

"The initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge." Officers for Justice v. Civil Serv. Comm'n of the City and County of San Francisco, 688 F.2d 615, 625 (9th Cir. 1982).  Where, as here, a settlement has been reached prior to formal class certification, "a higher standard of fairness" applies due to "[t]he dangers of collusion between class counsel and the defendant, as well as the need for additional protections when the settlement is not negotiated by a court designated class representative[.]" Hanlon, 150 F.3d at 1026.  In undertaking a fairness inquiry, the settlement must be "taken as a whole, rather than the individual component parts, that must be examined for overall fairness." Id.  The Court has no power to "delete, modify or substitute certain provisions"—and the settlement "must stand or fall in its entirety." Id.

To make a fairness determination, the district court must balance a number of factors, including: (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. See Molski v. Gleich, 318 F.3d 937, 953 (9th Cir. 2003).  Given that some of these "fairness" factors cannot be fully assessed until the Court conducts the final approval hearing, "'a full fairness analysis is unnecessary at this stage.'" See Alberto v. GMRI, Inc., 252 F.R.D. 652, 665 (E.D. Cal. 2008) (citation omitted).  Rather, preliminary approval of a settlement and notice to the proposed class is appropriate:  if "[1] the proposed settlement appears to be the product of serious, informed, noncollusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls with the range of

possible approval . . . ." In re Tableware Antitrust Litig., 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (citing Manual for Complex Litigation, § 30.44 (2d ed. 1985)).

In the instant case, the settlement was reached as a result of mediation, which "tends to support the conclusion that the settlement process was not collusive." Villegas v. J.P. Morgan Chase & Co., No. C 09-261 SBA, 2012 WL 3542187 at *5 (N.D. Cal. Aug. 14, 2012). In addition, Plaintiff claims to have obtained some informal discovery prior to participating in the mediation. Salassi Decl. ¶ 15. However, Plaintiff fails to proffer sufficient information for the Court to determine whether the settlement falls within the range of possible approval. "To evaluate adequacy, courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." In re Tableware Antitrust Litig., 484 F. Supp. 2d at 1080. Here, Plaintiff alleges that "Class Counsel evaluated the Settlement by weighing the maximum damages available to the class members for their overtime and statutory break claims against the relevant risk factors." Salassi Decl. ¶ 20. However, Plaintiff does not specify the maximum recovery that Plaintiff could have obtained if the action were concluded on the merits. Without that information, the Court is unable to assess, at this juncture, whether the proposed settlement is reasonable. See Villegas, 2012 WL 3542187 at *5.

The Court also has concerns regarding the parties' agreement that class members only have thirty days to submit claims forms. A shorter claims period is likely to decrease the number of claims submitted. This undoubtedly benefits Defendant—particularly where, as here, the settlement provides that unclaimed settlement funds revert to Defendant. Salassi Decl. Ex. A at 14. Plaintiff's concern, however, should be in protecting the interests of the class, not those of Defendant or the attorney fee award sought by her counsel, which will remain the same regardless of the number of class members submitting claim forms. Thus, should Plaintiff attempt to renew her motion for preliminary approval, she should ensure that class members are afforded at least sixty days to submit claim forms. C.f. Sanchez v. Sephora USA, Inc., No. C 11-03396 SBA, 2012 WL 2945753 at *6 (N.D. Cal.

July 18, 2012) (noting that in Fair Labor Standard Act collective actions, courts generally provide sixty to ninety days to opt in).

## III. CONCLUSION

The Court concludes that Plaintiff has failed to demonstrate that conditional class certification under Rule 23(a) and (b)(3) or preliminary approval of the class settlement is warranted at this time. Accordingly,

IT IS HEREBY ORDERED THAT Plaintiff's Motion for Preliminary Approval is DENIED.

IT IS SO ORDERED.

Dated: November 25, 2012

*Saundra B Armstrong*
SAUNDRA BROWN ARMSTRONG
United States District Judge

- 10 -