UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| KHANH NIELSON, individually, and on behalf of all others similarly situated,<br><br>　　　　　Plaintiffs,<br><br>　vs.<br><br>THE SPORTS AUTHORITY, and DOES 1 through 100, inclusive,<br><br>　　　　　Defendants. | Case No: C 11-4724 SBA<br><br>**ORDER DENYING RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND ORDER TO SHOW CAUSE RE DISMISSAL**<br><br>Dkt. 32 |

Plaintiff Khanh Nielson ("Plaintiff") brings the instant putative wage and hour class action on behalf of herself and all other non-exempt employees of The Sports Authority ("Defendant" or "Sports Authority"), a sporting goods retailer, claiming that they were not paid in accordance with the California Labor Code. Though Plaintiff does not dispute that non-exempt employees were correctly classified, she alleges that such employees were subject to off-the-clock "mandatory security checks" of their personal bags whenever they left the store, even when they were leaving to take a rest or meal break.

The Court previously denied Plaintiff's motion for preliminary approval due to various deficiencies. The parties subsequently revised their settlement and have now submitted a "Stipulated Ex Parte Application" for settlement approval, which the Court construes as a renewed motion for preliminary approval. Dkt. 32. Having read and considered the papers filed in connection with this matter, the Court DENIES the parties' motion. In addition, the Court directs the parties to show cause why the instant action should not be dismissed for lack of jurisdiction and/or failure to prosecute under Federal Rule of Civil Procedure 41(b).

## I. BACKGROUND

### A. FACTUAL OVERVIEW

Defendant is a retailer of athletic clothing and equipment which operates stores throughout California. Nielson Decl. ¶ 4 (att'd as Ex. C to Salassi Decl.), Dkt. 32-1. According to Plaintiff, Defendant has failed to comply with California wage and hour laws by compelling all non-exempt store employees to undergo off-the-clock security checks, presumably to ensure that they are not stealing merchandise. Plaintiff alleges:

> During the Class Period, Defendant had a consistent policy of, inter alia, (1) requiring its non-exempt retail employees, including Plaintiff and Class Members, to remain at work, under the control of Sports Authority, after completion of these workers' ordinary duties, without paying these employees' wages (including overtime wages) for all compensable time, (2) requiring its non-exempt retail employees, including Plaintiff and Class Members, to submit to mandatory security checks of their persons and/or belongings without paying them compensation (including overtime and/or other compensation for working during meal and/or rest periods), (3) willfully failing to pay compensation owing in a prompt and timely manner to those Class Members whose employment with Sports Authority has terminated, (4) willfully failing to provide Plaintiff and Class Members with accurate semimonthly itemized statements of the total number of hours each of them worked, the applicable deductions, and the applicable hourly rates in effect during the pay period, and (5) willfully failing to provide meal periods and/or rest periods to Plaintiff and/or Class Members.

Compl. ¶ 4. There is no dispute between the parties that, for purposes of this litigation, all class members were properly classified. According to Plaintiff, the only issue regarding the payment of wages arises from Defendant's alleged policy of subjecting employees to security checks without pay. Ex Parte Appl. at 2 n.5 ("there is no misclassification issue in this case. . . .  The claims in this lawsuit relate to Defendant's daily mandatory security checks.").

Plaintiff has been employed by Defendant at its Sunnyvale and Union City locations since 2007. Nieslon Decl. ¶¶ 2-3. For the time period from 2007 to March 2011, Plaintiff worked as a non-exempt Operations Manager, and thereafter, assumed the position of Lead

Price Auditor Coordinator. Id.[1] In her declaration filed in support of the instant application, Plaintiff states that "based on [her] understanding" Defendant maintains a security inspection policy of inspecting employees' bags whenever they exit the store, even when they are taking a meal or rest break. Id. ¶ 5. She also claims, again based "on [her] understanding," that employees are not paid for missed breaks or overtime wages. Id. ¶¶ 6-7. Plaintiff does not articulate the factual basis for her "understanding" that such policies and practices actually exist. Perhaps more fundamentally, Plaintiff does not state in her declaration that she was personally subjected to Defendant's bag inspection policy or that she was in any way harmed by that policy. Nor does Plaintiff claim that she is owed overtime wages or wages for missed breaks.

B. **PROCEDURAL HISTORY**

On August 22, 2011, the law firm of Scott Cole & Associates ("SCA") filed the instant action in state court on behalf of Plaintiff, individually and on behalf of "[a]ll persons who are and/or were employed as non-exempt employees by The Sports Authority, Inc. in one or more of its California retail stores between August 22, 2007 and the present." Compl. ¶ 20. Defendant removed the action to this Court on September 22, 2011, on the basis of diversity jurisdiction, 28 U.S.C. § 1332(a), and the Class Action Fairness Act, id. § 1332(d)(2). Dkt. 1.

The Complaint alleges state law causes of action for: (1) failure to provide meal and rest periods; (2) failure to pay wages (straight time, overtime, premium pay, and minimum wage); (3) failure to provide accurate itemized or properly formatted wage statements; (4) failure to pay wages upon termination or timely upon/after termination; (5) unfair business practices in violation of Cal. Business and Professions Code section 17200, et seq.; and (6) violation of the California Private Attorney General Act, Cal. Labor Code

---

[1] Unlike the Operations Manager position, Plaintiff does not specify in her declaration whether the Lead Price Audit Coordinator was classified as an exempt or non-exempt position. Nielson Decl. ¶ 2.

**1 2** section 2699 et seq.  The Complaint also seeks waiting time penalties under Labor Code section 203, pre-judgment interest, and attorneys' fees and costs.

**3** On February 27, 2012, the Court entered an Order for Pretrial Preparation ("Scheduling Order"), pursuant to Rule 16.  Order for Pretrial Prep., Dkt. 19.  Among other things, the Scheduling order set:  May 7, 2013 as the motion cut-off date; May 28, 2013 as the deadline to file pretrial documents; a pretrial conference for June 25, 2013; and a trial date of July 8, 2013.  Id. at 1-2, 5.

On August 31, 2012, Plaintiff filed a motion for preliminary approval, which sought preliminary approval for a $2.5 million settlement (with an unrestricted reversion to Defendant of any unclaimed net settlement funds), conditional certification of the settlement class under Rule 23(a) and (b)(3), the appointment of SCA as class counsel, the appointment of Plaintiff as the class representative and authorization for Plaintiff's counsel to solicit bids from prospective claims administrators.  Pl.'s Mot. for Prelim. Approval at 1, Dkt. 24.

On November 27, 2012, the Court denied Plaintiff's motion for preliminary approval on several grounds.  Nielson v. The Sports Authority, No. C 11-4724 SBA, 2012 WL 5941614 (N.D. Cal. Nov. 27, 2012), Dkt. 28.  With regard to the matter of conditional class certification, the Court found that Plaintiff had failed to carry her burden under Rule 23(a) and (b)(3) with regard to her showing of commonality, typicality, adequacy of representation, predominance and superiority.  Id. at *3-5.  Much of the Court's concern arose as a result of Plaintiff's failure to specify the nature of her position and duties as well as the alleged company policy that forms the basis of her claims.  The Court further concluded that Plaintiff had failed to provide sufficient information for it to assess whether the proposed settlement is reasonable.  Id. at *6.  Finally, the Court expressed concerns regarding the proposed class notice.  Id.

//

//

On June 7, 2013, a month after the motion cut-off had lapsed, the parties submitted a 24-page renewed motion for preliminary approval in the form of a document styled as a "Stipulated Ex Parte Application for Order: (1) Granting Preliminary Approval of Class Action Settlement; (2) Granting Conditional Certification of the Settlement Class; (3) Appointing Class Counsel, Class Representative and Claims Administrator; and (4) Approving First Amended Complaint, Class Notice, Claim Form, Request For Exclusion Form." Dkt. 32. In an effort to rectify the deficiencies of her first motion, Plaintiff has submitted a declaration to clarify her job titles and the nature of the "mandatory security policy" that underlies the claims alleged in the Complaint. Nielson Decl., Dkt. 32-1. As will be set forth below, the stipulated ex parte application is an improper and untimely renewed motion for preliminary approval. In addition, said motion raises concerns regarding Plaintiff's standing as well as her compliance with the Court's Scheduling Order.

## II. DISCUSSION

### A. TIMELINESS

The threshold issue presented is whether the parties' putative renewed motion for preliminary approval is timely. The Court's Scheduling Order provides that: "All motions including dispositive motions shall be heard on or before 5/7/13, at 1:00 p.m." See Order for Pretrial Prep. at 1. Once entered by the court, a scheduling order "controls the course of the action unless the court modifies it." Fed. R. Civ. P. 16(d). The Ninth Circuit has emphasized the importance of complying with a district court's scheduling order, noting that it "is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 610 (9th Cir. 1992) (internal quotations omitted). As such, motions filed beyond the deadline set in a Rule 16 scheduling order may be denied as untimely where no request to modify the scheduling order has been made and granted. Id. at 608-609; e.g., Onyx Pharms., Inc. v. Bayer Corp., No. C 09-2145 EMC, 2011 WL 4527402, *2 (N.D. Cal. Sept. 21, 2011)

(denying as untimely defendant's motion which was filed after deadline in the court's scheduling order) (citing cases).[2]

In the instant case, the parties filed their renewed motion for preliminary approval on June 7, 2013, a month after the May 7th motion cut-off date—without requesting or obtaining leave of court to file the motion. Rather than seeking a modification to the Scheduling Order, the parties have instead attempted to circumvent the motion deadline by styling their motion as a "Stipulated Ex Parte Application"—as opposed to a motion—for preliminary approval. Such tactics are unavailing. It is well settled that "[t]he nomenclature the movant uses is not controlling." Miller v. Transamerican Press, Inc., 709 F.2d 524, 527 (9th Cir. 1983). Rather, it is the substance of the motion and the nature of the relief sought that determines how a motion or request is to be construed. Id. Here, the substance of and relief sought in the parties' ex parte application are functionally indistinguishable from Plaintiff's earlier motion for preliminary approval, which was appropriately filed as a noticed motion under Civil Local Rule 7-2. Dkt. 24. As such, the Court construes the parties' ex parte application as a motion subject to the May 7 motion cut-off. Since the parties failed to comply with the Court's Standing Order and seek an extension of the motion cut-off—and have not otherwise shown good cause to extend the motion cut-off—the Court denies their renewed motion for preliminary approval as untimely.[3]

---

[2] Once a Rule 16 scheduling order is entered, the schedule "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." Johnson, 975 F.2d at 909; see also Coleman v. Quaker Oats Co., 232 F.3d 1271, 1294 (9th Cir. 2000). Where the moving party has not been diligent, the inquiry ends and the motion should be denied. Zivkovic v. S. Cal. Edison Co., 302 F.3d 1080, 1087 (9th Cir. 2002).

[3] The Court also notes that the renewed motion is 24-pages long which is in excess of the 15-page limit set forth in the Court's Standing Orders. Case Management Order for Reassigned Cases at 5, Dkt. 16. The parties neither sought nor obtained leave to file an oversized brief.

**B.    STANDING**

Separate and apart from the matter of the timeliness, the Court finds that there are serious questions regarding whether Plaintiff has standing. Under Article III of the United States Constitution, standing is a threshold requirement in every civil action filed in federal court. U.S. Const., art. III, § 2, cl. 1; Elk Grove Unified Sch. Dist. v. Newdow, 524 U.S. 1, 11 (2004) ("In every federal case, the party bringing the suit must establish standing to prosecute the action."). Constitutional standing is established by showing: (1) an injury in fact, which is a violation of a protected interest, that is both (a) concrete and particularized and (b) actual or imminent; (2) a causal connection between the injury and the defendant's conduct; and (3) a likelihood that the injury will be redressed by a favorable decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). "Standing is determined as of the commencement of litigation." Biodiversity Legal Found. v. Badgley, 309 F.3d 1166, 1170 (9th Cir. 2002). The party seeking relief "bears the burden of showing that he has standing for each type of relief sought." Summers v. Earth Island Inst., 555 U.S. 488, 493 (2009).

The standing requirement applies to a class representative, who, in addition to being a member of the class he purports to represent, must establish the existence of a case or controversy. O'Shea v. Littleton, 414 U.S. 488, 494 (1974). A "class representative must be part of the class and possess the same interest and suffer the same injury as the class members." Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 156 (1982) (quotation omitted); "If the litigant fails to establish standing, he may not 'seek relief on behalf of himself or any other member of the class.'" Nelsen v. King County, 895 F.2d 1248, 1250 (9th Cir. 1990) (quoting O'Shea, 414 U.S. at 494); Cornett v. Donovan, 51 F.3d 894, 897 n.2 (9th Cir. 1995) ("if the representative parties do not have standing, the class does not have standing."); see also Douglas v. U.S. Dist. Court for Cent. Dist. of Calif., 495 F.3d 1062, 1069 (9th Cir. 2007) (holding that a plaintiff whose individual claim was rendered moot by an arbitration award "would lose his status as class representative because he would no longer have a concrete stake in the controversy."). "[S]ubject matter jurisdiction cannot be

waived, and the court is under a continuing duty to dismiss an action whenever it appears that the court lacks jurisdiction." Augustine v. United States, 704 F.2d 1074, 1077 (9th Cir. 1983).

Here, it is apparent that Plaintiff has not suffered any injury resulting from Defendant's security policy or any other wage-related conduct. In her declaration filed in support of the instant motion, Plaintiff states:

> I brought these claims based on my understanding of Sports Authority's policies relating to timekeeping, meal/rest breaks, and security inspections (under which employee's bags are inspected when they exit the store, including for a meal or rest break). With respect to the security inspection policy, it is my understanding that Sport's Authority's policy is to 1) not record time spent in security inspections (they are conducted after an employee clocks out), 2) not compensate employees for inspection time and 3) not add a corresponding amount of time to employees' meal or rest break or pay a meal or rest break premium.

Nielson Decl. ¶ 5 (emphasis added). She further claims that "it is [her] understanding" that employees are not paid overtime wages and are not paid for missed breaks. Id. ¶¶ 6-7.

Notably absent from the record is any evidence that Plaintiff was personally subjected to Defendant's security inspection policy while she was on a rest or meal break, or that she otherwise was not fully and properly compensated by Defendant. Moreover, the fact that Plaintiff prefaces all of her representations regarding Defendant's alleged practices with statement that "it is my understanding" (or words to that effect) shows that she has no personal knowledge of the conduct that forms the basis of this lawsuit. See Bank Melli Iran v. Pahlavi, 58 F.3d 1406, 1412-13 (9th Cir. 1995) (declaration made by opposing counsel based on information and belief shows lack of personal knowledge); Sterling Acceptance Corp. v. Tommark, Inc., 227 F. Supp. 2d 454, 459 (D. Md. 2002) (striking statement in an affidavit prefaced with the words "my understanding," finding that such words indicated a lack of personal knowledge).

In the absence of a showing that Plaintiff suffered any actual injury, she has no standing to maintain this action either individually or as a class action. See Black Faculty Ass'n of Mesa College v. San Diego Cmty. College Dist., 664 F.2d 1153, 1157 (9th Cir.

1981) (vacating judgment for lack of standing where plaintiffs were not members of the class); <u>Wuest v. Cal. Healthcare W.</u>, No. 3:11-CV-00855-LRH-VPC, 2012 WL 4194659, *5 (D. Nev. Sept. 19, 2012) ("Since Plaintiff has not suffered the relevant injury in fact under the waiting-time statutes, Plaintiff lacks standing to claim waiting-time penalties . . . for herself or as a representative of the class"); <u>See</u> <u>In re Flash Memory Antitrust Litig.</u>, No. C 07-0086 SBA, 2010 WL 2465329, *6 (N.D. Cal. June 10, 2010) (finding that plaintiff who did not purchase any of the flash memory products at issue in his antitrust class action lacked standing to sue). Because it appears that Plaintiff lacks standing to maintain this action, the Court therefore directs her to show cause why the instant action should not be dismissed for lack of subject matter jurisdiction. <u>In re Flash Memory Antitrust Litig.</u>, 2010 WL 2465329, *6 (N.D. Cal. June 10, 2010); <u>see also</u> Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

### C. FAILURE TO COMPLY WITH COURT'S SCHEDULING ORDER

"Pursuant to Federal Rule of Civil Procedure 41(b), the district court may dismiss an action for failure to comply with any order of the court." <u>Ferdik v. Bonzelet</u>, 963 F.2d 1258, 1260 (9th Cir. 1992). "In determining whether to dismiss a claim for failure to prosecute or failure to comply with a court order, the Court must weigh the following factors: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to defendants/respondents; (4) the availability of less drastic alternatives; and (5) the public policy favoring disposition of cases on their merits." <u>Pagtalunan v. Galaza</u>, 291 F.3d 639, 642 (9th Cir. 2002).

In the instant case, Plaintiff has violated the Scheduling Order in at least two significant respects. First, as discussed above, Plaintiff failed to file her renewed motion for preliminary approval until well after the motion cut-off date had passed. Instead, she attempted to circumvent that deadline by styling her motion as a stipulated ex parte application. Second, Plaintiff has failed to comply with the deadline for filing pretrial documents, which were due by May 28, 2013. By seeking to circumvent the Court's

Scheduling Order, Plaintiff's actions have unnecessarily consumed "valuable time that [the court] could have devoted to other major and serious criminal and civil cases on its docket." Ferdik, 963 F.2d at 1261.

### III. CONCLUSION

For the reasons set forth above,

IT IS HEREBY ORDERED THAT:

1. The parties' renewed motion for preliminary approval is DENIED.

2. By no later than seven (7) days from the date this Order is filed, Plaintiff shall show cause, in writing, why the instant action should not be dismissed for (a) lack of subject matter jurisdiction and (b) failure to comply with a court order.  Defendant shall file its response, if any, within seven (7) days after Plaintiff files her brief.  The parties' respective memoranda shall not exceed ten (10) pages in length.  The Court will deem the matter under submission upon the filing of Defendant's memorandum.

3. This Order terminates Docket 32.

IT IS SO ORDERED.

Dated: July 5, 2013

_____
SAUNDRA BROWN ARMSTRONG
United States District Judge